Dean *vs.* Traylor.

---

No. 28.—JAMES DEAN, plaintiff in error, *vs.* WILLIAM TRAYLOR, defendant in error.

[1.] To entitle the vendee to recover damages of the vendor, for a breach of warranty of soundness, in the sale of negro children, whose mother was proven to have died of consumption, it is necessary to shew, either that the disease was hereditary in the family, or that the children were born subsequent to the actual existence of the complaint in the mother.

*Assumpsit,* on appeal from *Bibb Superior Court.    Decision* made by Judge FLOYD, at July Term, 1849.

James Dean, on 31st May, 1847, sold, with warranty, to Wm. Traylor, the negro Sofa, and her three children, for $1350.    On the 23d of April, 1848, Sofa died of consumption; the opinion of physicians was unhesitating, that the disease was consumption, and that she was " diseased in that way, previous to 31st May, 1847"—though one witness, the agent of Dean, and who brought the slave to Georgia, and who was not a physician, testified that Sofa was sound, and had no cough, or other symptoms of consumption, when Dean sold her.

The plaintiff below declared for damages, not only for the unsoundness and loss of Sofa, but for the unsoundness of the children.    The proof on this point was, that " the disease is hereditary, and, of course, the children cannot be as valuable as if born of a healthy mother, and are worth all or more than a third less."

VOL. VIII.    22

Davis *vs.* Traylor.

In another set of answers, same witness values the children at half price, on said account. Another witness thinks two of the children have " consumptive marks about them—though it does not necessarily follow, that children will have consumption because the mother has it."

It was proved that Sofa was sold, by Dean, for $600.

On the trial, defendant's counsel objected to so much of the declaration as sought damages for the alleged liability of the children to said disease—it not being alleged that they were then unsound—and to any evidence being given on this point; which was overruled. The charge of the Court was also excepted to, which will be known by the exceptions. The Court's charge is not recited in bill of exceptions; but it appears that defendant below asked the Court to charge that, under the evidence, the Jury could not find any damages on account of any supposed unsoundness of the children—which the Court refused to do.

Under the charge of the Court, as to the rule and measure of damages, it was admitted by both sides, that about $150 of the finding was on account of the children. The finding was for plaintiff—$750, with costs.

A new trial was moved for, on the foregoing grounds, taken during the trial, and also, because the verdict was claimed to be contrary to law and evidence. Motion overruled.

McDONALD and POWERS & WHITTLE, for plaintiff in error.

POE & NISBET, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] This was an action of *assumpsit,* for the breach of a warranty of the soundness of four slaves—Sofa and her three children—in this: that the mother was laboring under consumption at the time of the sale, and that the offspring had partaken of the same disease, by inheritance. A verdict of $750 having been rendered for the plaintiff, a new trial was moved for, on the ground, that the finding of the Jury was contrary to law and evidence; and it is for the refusal of the Court to grant this application, that this writ of error is prosecuted.

We have scrutinized the testimony thoroughly, and are satisfied

Davis *vs.* Traylor.

that the verdict, as to the woman, was justified by the proof; but we think it wholly insufficient as to the children.

We do not doubt that pulmonary consumption is an hereditary disease; in other words, that the *tuberculous* constitution is transmitted from parent to child, is a fact not to be controverted. Indeed, it may be regarded as one of the best established points in the etiology of disease. I am aware that, in the medical world, there are two parties, holding diametrically opposite opinions upon this subject—one maintaining that the disease is always hereditary and never acquired; the other, that no diseases are hereditary, but that they are always the result of circumstances, which come into action after birth; but in this, as in every thing else, truth, I apprehend, will be found in the middle ground, between these two extremes. How far consumption, cancer, insanity, or any other diseases, in the parent, will probably re-produce themselves in the offspring, is not very satisfactorily ascertained. The most moderate calculation is, that in children subjected after birth to similar circumstances, the hereditary influence does not appear to be exerted beyond 4 per cent. The most eminent physicians entertain no doubt that hereditary disease may fail to appear in one generation, and afterwards develop itself in a succeeding generation. This, they say, has frequently happened; and such, I believe, is the common observation upon this subject. Even family likenesses and peculiarities, transmitted through many generations, are matters of daily occurrence and remark. I deem it altogether useless to spend more time in establishing a physiological fact, which appears to have passed into a proverb among the Jews, as early, at least, as the days of Ezekiel, the prophet—" The *fathers* have eaten sour grapes, and the *children's* teeth are set on edge."

Without trespassing further, then, upon territory belonging more appropriately to another profession, and assuming that this disease is transmissible by natural generation, still, we think the evidence, as to the children, was defective in this : it neither appeared from the testimony, that the children were born *subsequent* to the development of the disease in the mother, or that consumption was an *ancestral* disease in the family, either on the maternal or the paternal side. And one of these facts should have been proven, to warrant a recovery ; for it is clear, that if the disease in the woman was not hereditary, but produced in her by expo-

Davis *vs.* Traylor.

sure, or any other *supervenient* cause, then the offspring born *prior* to that period, could not have derived the taint from their mother.

The Jury, in assessing the damages, we gather from the record, as well as the admissions of counsel in the argument, seem to have taken the price of the woman, $600, and added to it $150 on account of the children. So far as the woman is concerned, we are willing that the verdict should stand; and acting under the ample powers conferred upon this Court, by the Statute creating it, of "awarding such order and direction in the premises, as may be consistent with the law and justice of the case," we shall remand this cause, with the following instructions, to-wit:

That there was error in the Superior Court, in the finding of the Jury, in reference to the children of the woman Sofa—the evidence being wholly insufficient to sustain the recovery on account of the alleged unsoundness in them; and that, so far, the judgment of said Court be reversed, in refusing a new trial; and that a new trial be had in this case, unless the plaintiff shall remit all of said verdict except the sum of $600, with interest thereon from its date, and the cost of the case below, with liberty to strike out of the declaration so much thereof as relates to the children of Sofa. It is further directed, that the cost incurred in this Court, be paid by the defendant in error.

It is better for both parties—*vendor* and *vendee*—that further time be allowed, to test the existence of the disease in the children—the testimony going merely to establish the symptoms or predisposition to consumption, rather than the actual complaint itself. If they have it, and derived it from their mother, $150 will not compensate for the injury. The opinions, on the other hand, of the highly respectable and intelligent physicians who were examined on the trial, may turn out to be erroneous; and in that event, the seller should be relieved altogether from any liability on account of the children.